**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:22-cv-00130 |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**JOINT STATUS REPORT**

The parties respectfully submit this Joint Status Report pursuant to the Court's September 25, 2022 Minute Order, directing the parties to "submit a further joint status report by October 24, 2022." Consistent with that Order, the parties have met and conferred. As explained below, the parties request the Court's assistance with a dispute concerning the production schedule. The parties further report as follows:

1.      At issue in this Freedom of Information Act ("FOIA") lawsuit is Plaintiff's March 5, 2021 FOIA request to the Department of Justice ("DOJ") seeking certain records related to the "United States Department of Justice Statement on the PCAST Report:  Forensic Science in Criminal Courts:  Ensuring Scientific Validity of Feature-Comparison Methods" ("the Statement").

2.      OIP is currently processing the Department's potentially responsive records for responsiveness, production/withholding, or for consultation/referral with others.

3.      OIP has issued interim responses to Plaintiff's FOIA request on March 16, May 10, June 10, July 11, July 22, August 10, September 9, and October 11, 2022.

4.      OIP identified approximately 17,000 pages of potentially responsive documents from the Office of the Deputy Attorney General and additional potentially responsive documents from the Office of Legal Policy. To date, OIP has processed approximately 7,134 pages containing records responsive to Plaintiff's request. Of the documents that OIP has processed to date, OIP

has withheld in full approximately 3,703 pages and has sent the remainder to other Department components for consultation.

5.     On July 22, 2022, OIP released 523 pages of material responsive to Plaintiff's FOIA request that had previously been sent for consultation in May and June, with certain information withheld pursuant to Exemptions 5 and 6 of the FOIA.  No other material has yet been produced to Plaintiff, including the material that was sent for consultation in July, August, September, and October.  As of the October 11 interim response, 2,908 pages of material remain on consultation with Department components.

6.     The parties have agreed that OIP will provide its next interim response by November 10, 2022, and that OIP will process a minimum of 650 pages in connection with that response.

7.     Following the November 10, 2022, response, the parties will again confer regarding OIP's processing schedule.  Plaintiff reserves the right to seek an increase to the pace of processing. The parties will also continue to discuss issues related to the scope of the FOIA request.

8.     The parties do, however, diverge on one matter: whether a schedule for production of the documents that have been processed by OIP but sent out for consultation is appropriate, given the circumstances of this case, and, if so, the appropriate rate of production of those documents.  The parties set forth their disparate views on this issue below:

**Plaintiff's Position**

9.     Plaintiff first submitted its FOIA request to the Department on March 5, 2021.  It has been litigating this matter since January 19, 2022.  At least as of the parties' May 27, 2022 Joint Status Report, the Department had identified the set of approximately 17,000 pages of potentially responsive material. But in the intervening months, Plaintiff has received only one production of documents.  This is unacceptable.

10.    Although OIP has, over the last several months, conducted its initial processing of documents at or above the agreed-upon rate, this has not resulted in meaningful document production to Plaintiff.  The delay is due to other components of the Department—the defendant

in this case—not completing review of the responsive records on which OIP sought consultation in a timely manner: nearly 3,000 pages of records responsive to this FOIA remain in the consultation process.

11.     As reported in DOJ's interim responses, OIP has thus far determined that 3,431 pages of records are responsive and has not identified a relevant FOIA exemption—that is, OIP has identified no legal basis to withhold these records.  It is Plaintiff's understanding that OIP has sent these documents to other components of DOJ, the defendant agency, that may have an interest in their contents, and has been waiting to receive responses from each component before production. To date, DOJ has completed this process for only 523 pages; the Department has not completed consultation for, or produced, a single document processed by OIP after June (including 452 pages processed in July; 1,008 in August; 433 in September; and 1,046 in October).

12.     Plaintiff understands that the defendant agency has an internal procedure that it wishes to follow, but the consultation process does not relieve the Department of its obligations to produce records in a timely manner. The default statutory deadline for a final determination is 20 days.  5 U.S.C. § 552(a).  When an agency requires an extension due to "unusual circumstances" such as the need for consultation, the agency still must complete that process "with all practicable speed" and should provide "an opportunity to arrange" an "alternative time frame."  5 U.S.C. § 552(a)(6)(B)(i)-(iii).  The Department's unwillingness to commit to a production schedule is inconsistent with its obligations under the FOIA and the spirit of the rolling processing agreements to which the parties have agreed.  Unlike FOIA productions in which the defendant agency cannot control the pace of consultation by sister agencies, it is entirely within the Department's power to control its pace of internal review. But in the absence of an externally imposed deadline (such as the Court order Plaintiff seeks), the Department has no incentive, nor, apparently, will, to provide any timeframe or ongoing productions to Plaintiff.

13.     The past months have shown that tying the Department's obligations only to the processing schedule of OIP will not result in a timely production of records, despite the fact that

OIP has identified no legal basis for withholding the outstanding records. Indeed, DOJ has not produced a single document in more than three months.

14.     Despite Plaintiff's repeated, months-long attempts to reach agreement on a production schedule, until Plaintiff provided notice that it planned to seek a deadline from this Court, DOJ declined to project a date by which it expects to make any further production. On the date of this filing, the Department informed Plaintiff that it intends to produce (or convey a decision to withhold) approximately 200 pages (which is less than half the number of pages sent for consultation in June) by October 28, 2022. But the Department continues to refuse to commit to complete its remaining consultations by any particular date or to set a production schedule on an ongoing basis. At this time, Plaintiff has no expectation of when it will receive productions with the remaining outstanding documents.

15.     The parties' current agreement for DOJ to process a certain number of pages each month is meaningless from Plaintiff's perspective if the production of those pages is then delayed for an indeterminate and interminable period. DOJ's FOIA obligations require more. And DOJ has not provided any particularized explanation for why three months is not sufficient to complete its internal consultation process, nor how any delay beyond that could be considered consistent "with all practicable speed." The fact of the consultation process does not "give [DOJ] carte blanche to let the consultation play out without any time restraints." *National Public Radio, Inc.* v. *U.S. Dep't of Treasury*, Case No. 19-17 2021 WL 1850696, at *2 (D.D.C. Mar. 31, 2021).

16.     Plaintiff therefore respectfully requests that this Court order DOJ to produce (or convey a decision to withhold) 200 pages by October 28 and at least another 252 pages by November 10. This will ensure that the Department completes its process for an amount equal to the pages sent for consultation in June within the next two weeks. As the Department notes below, the remaining documents have been in the Department's internal consultation process for 90 days or less. In order to give DOJ a sufficient amount of time to compete consultation while providing Plaintiff a firm production schedule going forward, Plaintiff therefore respectfully requests that, looking ahead, this Court order DOJ to produce (or convey a decision to withhold) every 30 days

at least 500 pages of documents previously sent for consultation, not to exceed the number of pages that have been outstanding for more than 90 days.  This pace will have the practical effect of requiring document production on a schedule roughly three months behind OIP's processing schedule.

17.     Should the Court require further information, Plaintiff respectfully requests that a status conference may be appropriate.

### Defendant's Position

18.     Contrary to Plaintiff's characterization, OIP has worked and continues to work diligently to respond to Plaintiff's FOIA request. Indeed, OIP agreed to a particularly aggressive processing schedule in this case, and it has consistently met and exceeded those its monthly targets. OIP has also agreed to prioritize review of a subset of the potentially responsive records based on Plaintiff's request.  Due to the scope and nature of Plaintiff's request, however, many of the records sought by Plaintiff's FOIA request require intra-agency consultation with several Department components, and that process cannot be completed overnight. Given OIP's demonstrated effort in responding to Plaintiff's FOIA request, OIP does not believe that a court-ordered production schedule is necessary or appropriate in this case.

19.     As an initial matter, consultation with other agencies and components is plainly contemplated by the FOIA.  *See* 5 U.S.C. § 552(6)(B)(iii)(III) (recognizing "the need for consultation," including "among two or more components of the agency having substantial subject-matter interest therein" as an unusual circumstance justifying extending the time to respond to a FOIA request).  The Department's FOIA regulations require that "[w]hen reviewing records located by a component in response to a request, the component shall determine whether another component or another agency of the Federal Government is better able to determine whether the record is exempt from disclosure under the FOIA."  28 C.F.R. § 16.4(d).  In such circumstances, the component shall proceed with either consultation, referral, or coordination.  *Id.* Where consultation is appropriate, "the component processing the request should typically consult with that other component or agency prior to making a release determination."  *Id.* § 16.4(d)(1).

In other words, OIP's process is consistent with its obligations under the FOIA and under the Department's FOIA regulations.

20.     Moreover, OIP has worked diligently to respond to Plaintiff's FOIA request. Plaintiff submitted its request to OIP on March 5, 2021, seeking a wide array of records related to the Statement.  In the intervening months, OIP has worked to process Plaintiff's FOIA request; however, OIP has also explained repeatedly that the breadth and content of Plaintiff's FOIA request would impact the time needed to process the request.  For example, on April 2, 2021, OIP sent a letter acknowledging receipt of the FOIA request. The letter explained that the records sought by the FOIA request "require[d] a search in and/or consultation with another Office," such that the request fell within the "unusual circumstances" exception to the standard FOIA time limit. *See* Compl. Ex. C, ECF No. 1-3 (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii) (providing for the extension of time limits to respond to FOIA requests in certain "unusual circumstances" and upon written notice)).  The letter also specified that Plaintiff's request was placed on the "complex track." *Id.*[1] In that letter, OIP offered Plaintiff an opportunity to "narrow the scope of [its] request to limit the number of potentially responsive records so that it can be placed in a different processing track" or to "agree to an alternative time frame for processing." *Id.*  In subsequent communications, OIP explained that it was conducting a search of the Departmental Executive Secretariat, as well as searches of approximately 22 custodians in the Office of the Deputy Attorney General ("ODAG") and the Office of Legal Policy ("OLP"). In a September 3, 2021 email, OIP explained that "the queue for such ediscovery searches is extensive and can cause a delay in [its] ability to respond to [Plaintiff]" and that OIP's search queues "are prioritized based on the number of records custodians being searched, as that is the leading factor on how long the ediscovery search will take to be completed." Compl. Ex. D, ECF No. 1-4. At that time, OIP offered Plaintiff the opportunity to

---

[1] According to the statistics available at FOIA.gov, the average processing time for complex FOIA requests submitted to OIP is 479 working days.

remove officials from the list of custodians or narrow the date range for their search, but Plaintiff did not do so.[2]

21.     During the ensuing months, OIP completed its extensive search of the Departmental Executive Secretariat, as well as its search of the 22 ODAG and OLP custodians.  Upon completion of the aforementioned searches, OIP then dedicated its efforts to completing the responsiveness review process. During this process, OIP evaluated documents identified by OIP's search, and subsequently identified approximately 17,000 pages of potentially responsive records.

22.     Plaintiff also overlooks the high volume of pages that OIP has processed over the past few months.  On March 16, 2022, OIP issued an interim response regarding to Plaintiff regarding the result of the search of the Departmental Executive Secretariat.  Beginning on May 10, 2022, OIP has provided timely monthly responses to Plaintiff's FOIA requests, processing an agreed-upon number of pages for production/withholding or for consultation with others. Although OIP agreed to process a minimum of 600 to 650 pages per month, OIP has often exceeded that agreed-upon by hundreds of pages each month.  For example, OIP's latest response issued on October 11, 2022, reported that OIP had processed 1,046 additional pages that month.

23.     OIP has processed approximately 7,134 pages in connection with Plaintiff's FOIA request over six months.  Had OIP met only the minimum processing commitment set out in previous JSRs, this number would have been approximately 3,950 pages.  To date, OIP has released in part 523 pages, and it has determined that approximately 3,703 pages should be withheld in full under the relevant FOIA exemptions.  In other words, OIP has completed review and processing of approximately 4,226 of the over seven thousand pages that it has reviewed in the last six months.

24.     In processing records responsive to Plaintiff's request, OIP determined that approximately 3,431 of the 7,134 pages processed required consultation with other Department

---

[2] On October 1, 2021, Plaintiff requested that OIP "prioritize" certain custodians in its review, but it did not elect to remove any custodians from the search or to otherwise narrow its request.  *See* Compl. Ex. E, ECF No. 1-5.

components who have equities in those records.[3]  On July 22, 2022, OIP released approximately 523 pages of these records sent on consultation.

25.     At present, approximately 2,908 pages are currently in the consultation process, nearly ninety percent of which were sent for consultation in the past three months.[4]  The records that have been out for consultation the longest were sent out on or around June 28, 2022, and thus have been in the consultation process for less than four months. These numbers do not reflect a lack of "incentive" or "will" on the part of OIP to track and complete consultations in a timely manner, to provide ongoing monthly responses to Plaintiff, and to release records as often as practicable.  Rather, they reflect the complexity and resource-intensive nature of consultation in this case.

26.     Given the nature of the records requested by Plaintiff's FOIA request, many of the records requested require consultation with multiple Department components. Indeed, OIP has determined that some of the records requested require consultation with multiple components, each of which must be consulted before OIP makes its release determination.  By way of example, if consultation is required of ten different Department components, OIP must consult with all ten components before making a release. As such, the consultation process becomes increasingly more complex as records involving numerous components are involved, and the time needed to obtain responses from every component increases the more components are involved.  It should further be noted that some components have their own internal, multi-tiered process of consult review.  In this case, Plaintiff has made a seven-part request for records that, by its nature, involves communications between several Department components, and prioritized the review and processing of a certain set of records per an agreement with Plaintiff.  Given the vast amount of

---

[3] Although OIP has determined that these pages are appropriate for consultation, it has not yet made a final determination whether they are appropriate for release, in fact responsive to Plaintiff's request, or may be withheld under relevant FOIA exemptions.

[4] Specifically, OIP sent 1,155 pages for consultation in advance of its August 10, 2022 response; 433 pages in advance of its September 9, 2022 response; and 1,046 pages in advance of its October 11, 2022 response.

communications and collaboration involved between various components, the inherent nature of Plaintiff's request necessitates a vast, and therefore complex, consultation process.

27.     When OIP sends records out for consultation, it provides a requested response date to the consulting component, and regularly follows up with each component regarding the status of the records sent for consultation.  Each component must separately review the records sent for consultation, while also contending with their own separate FOIA workloads and staffing considerations.  Thus, some components may need longer than others to review records sent for consultation.  Certain components may need as many as ninety days to complete their initial internal review of records sent for consultation or may only be able to review a specified number of pages per month, which accounts for both their ongoing responsibilities in responding to other FOIA requests and litigation and responding to other pending consultations and referrals. However, consistent with Departmental regulations, OIP generally must wait to hear from every component with equities in a record before making a release determination.

28.     Consultation under FOIA is not a one-size-fits-all process, and it is not as simple as "waiting to receive approval from each component before production."  Rather, the consultation process may involve back-and-forth conversations between OIP and the consulting entity regarding specific proposed withholdings or releases.  Thus, even after a component has reviewed the consultation documents and sent its initial response, there may be a need for further collaboration.  OIP is currently actively engaged in conversations with these components to clear the consultation process as promptly as possible; however, it can be difficult to predict how long this process may take, as it can vary based on issues that may arise during the consultation process.

29.     Given the number of moving parts involved in the consultation process, the Department has been unable to set a production schedule for records sent out for consultation. However, OIP continues to work diligently to produce records as soon as possible, and it strongly disagrees with Plaintiff's assertion that it intends to delay production for an "interminable period." Rather, OIP's conduct to date in this litigation has demonstrated that it is actively working to process and release (or convey its decision to withhold) records as soon as possible.

30.     With respect to future productions, OIP currently anticipates producing (or conveying a decision to withhold) approximately 200 pages on or about October 28, 2022.  In addition, OIP continues to work actively with other Department components to clear the remaining records sent for consultation, with a goal of making rolling releases as often as practicable.

31.     In any event, Plaintiff's proposed schedule is unreasonable.  Plaintiff is asking this Court to require OIP to complete the consultation process and prepare for production or withholding 452 pages within fourteen business days.[5]  Even if OIP had already received final comments from each interested component on each of those 452 pages—which it has not—it would not be practicable for OIP to review consultation responses and finalize records for release on approximately 450 pages on such a short timeframe, particularly while also processing 650 pages in connection with an interim response.[6]

32.     Plaintiff's request for a production schedule that requires OIP to produce (or convey a decision to withhold) at least 500 pages of material every 30 days also fails to account for the complexity and volume of consultations needed in this case.  As explained above, the consultation process is not as simple as seeking and receiving approval for a release, and it often requires additional discussion between OIP and the consulting component upon completion of an initial internal review.  For some records, the consultation process may be completed in a fairly short period of time, but for other records, the consultation process may take weeks or months.  The rigid production schedule proposed by Plaintiff does not account for this variability, nor does it

---

[5] Plaintiff's proposed order asks the Court to order the Department to produce (or convey a decision to withhold) all records originally processed in July or August 2022 by November 10, 2022. However, Plaintiff also asks the Court to order the Department to produce any record sent for consultation within two months of the interim response letter stating that it was sent for consultation, which would mean that records sent for consultation before the September 9, 2022, letter must also be produced by November 10, 2022.

[6] As noted above, OIP has frequently exceeded its agreed-upon processing rate as a courtesy to Plaintiff.  Plaintiff's requested processing schedule would effectively punish OIP for its diligence in processing more documents than required under the parties' agreement by locking OIP into a monthly production schedule that greatly exceeds the number of records that it initially agreed to process on a monthly basis.

account for the complexity of Plaintiff's FOIA request and the high volume of pages sent for consultation in this case.

33.     Given that OIP has consistently met and significantly exceeded its agreed-upon processing target, and that the majority of the pages sent for consultation have been out for consultation for fewer than ninety days, OIP does not believe that a production schedule is appropriate in this case at this time.  Based on the current status of the consultation process, OIP believes that it will be better positioned to provide an estimated timeframe for future releases, subsequent to the release anticipated this week, in late November.

*     *     *

34.     In light of the above, the parties request that the Court resolve their dispute regarding an appropriate document production schedule. The parties further propose to file another joint status report on or before November 22, 2022, in which they will update the Court on the status of OIP's response to Plaintiff's FOIA request, including the production status, and whether any further proceedings are necessary.

Dated:  October 24, 2022

*/s/ Jessica Anne Morton*
Jessica Anne Morton (DC Bar No. 1032316)
Samara M. Spence (DC Bar No. 1031191)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jmorton@democracyforward.org
sspence@democracyforward.org

*Counsel for Plaintiff*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Alexandra R. Saslaw*
ALEXANDRA R. SASLAW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-4520
Email: alexandra.r.saslaw@usdoj.gov

*Counsel for Defendant*